RENDERED: FEBRUARY 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1148-MR

MATT MINIARD AS EXECUTOR OF
THE ESTATE OF RALPH E.
MINIARD, JR.                                                           APPELLANT

v.                  APPEAL FROM PERRY CIRCUIT COURT
                    HONORABLE ALISON C. WELLS, JUDGE
                         ACTION NO. 17-CI-00481

ROBIN MINIARD; CHRIS ALLEX;
JESSICA ALLEX; AND JOSHUA
MINIARD                                                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE:  The Appellant, Matt Miniard, as executor of the estate of Ralph

E. Miniard Jr., seeks review of the Perry Circuit Court's May 1, 2019 order

enforcing the parties' prior settlement agreement and removing Matt as executor of

Ralph's estate in accordance with the agreed final judgment.[1]  The Appellees are

---

[1] As the parties have a common surname, for clarity, we refer to the individuals by their first names.

Robin Miniard, Chris Allex, Jessica Allex, and Joshua Miniard. Having reviewed

the record and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

Ralph had three sons during his life: Matt, John, and Robin. In 2011,

Matt moved the Perry District Court to appoint a guardian for Ralph on the

grounds of incompetency. In late 2013, the district court appointed Robin and

John as co-guardians.[2] John later passed away, leaving Robin as Ralph's sole

guardian.

During the course of serving as Ralph's guardian, Robin determined

that it was necessary to secure live-in caregivers to assist Ralph. Robin ultimately

hired his cousin, William Douglas Miniard, and William's wife, Myrtle

(collectively "the Cousins"), to assist Ralph. The Cousins reached an agreement

with Robin that in exchange for caring for Ralph they would receive title to

Ralph's home in Hazard after his death. Robin submitted the parties' written

agreement to the Perry District Court for approval; however, Ralph died on

February 22, 2017, before the district court approved the agreement.

Ralph died testate, and his will was probated with the Perry District

Court. Matt was appointed to serve as the executor of Ralph's estate in accordance

with the will. A short time later, the Cousins filed a probate claim with the estate

---

[2] Matt reportedly declined to serve as an appointed guardian for Ralph.

seeking title to the Hazard house on the basis of their prior agreement with Robin. As executor, Matt disallowed the Cousins' claim because the written agreement had never been approved by the district court. The Cousins then filed a probate claim against the estate for the value of the services they provided to Ralph prior to his death, which they claimed was approximately $308,000.00. As executor, Matt also disallowed this claim.

Next, the Cousins filed an action in the Perry Circuit Court pursuant to KRS[3] 395.510 and KRS 395.515 seeking to compel settlement of Ralph's estate.[4] Therein, the Cousins alleged that there was a disputed issue with respect to their right to receive compensation from Ralph's estate and that Ralph's personal estate had insufficient assets to settle their claim (which they again alleged was over $308,000.00). They demanded that, if necessary, the circuit court order Ralph's real property sold to satisfy their claim. Matt, as executor of Ralph's

---

[3] Kentucky Revised Statutes.

[4] KRS 395.510(1) permits creditors, among others, to "bring an action in circuit court for the settlement of [an] estate" six months after the appointment of a personal representative. In turn, KRS 395.515 permits the circuit court to adjudicate any genuine issues concerning: (1) "the right of any creditor, beneficiary or heir-at-law to receive payment or distribution[;]" (2) "a correct and lawful settlement of the estate[;]" and/or (3) "a correct and lawful distribution of the assets[.]" Additionally, where the personal estate appears insufficient for the payment of all debts, the circuit court "may order the real property descended or devised to the heirs or devisees who may be parties to the action . . . to be sold for the payment of the residue of such debts." *Id.*

estate, and Ralph's beneficiaries (Matt, Robin, Jessica, and Joshua) were named as defendants.[5] A bench trial on the Cousins' claim was scheduled.

Prior to the bench trial, Robin, Jessica, and Joshua (the "Appellees") moved the circuit court to remove Matt as executor of the estate on the ground that Matt had acted improperly as executor to their detriment.[6] According to Matt, his counsel did not receive a copy of the motion, and therefore, did not attend the September 14, 2018, hearing related thereto. Since Matt did not file a written response to the motion or appear at the hearing to voice an objection, it appeared to the circuit court that the motion was unopposed. Thus, the circuit court entered a written order granting the motion on September 24, 2018. Pursuant to the order, the circuit court named Robin the executor of Ralph's estate in place of Matt. On September 24, 2018, after Matt's counsel received a copy of the circuit court's

---

[5] Whittaker Bank was also named as a defendant because it had filed a claim against the estate. The claim was based on a personal guarantee Ralph gave the Bank in connection with a loan to Spring Fork, LLC, an entity owned by Ralph and Matt. The loan was in default due to unpaid property taxes. After Spring Fork, LLC paid the taxes, the Bank withdrew its claim, and it was subsequently dismissed from the circuit court action.

[6] Although not entirely relevant to the discrete issue before us, the Appellees asserted that Matt transferred real property from Spring Fork, LLC, which he owned jointly with Ralph, to an LLC that only Matt owned, thereby effectively appropriating for himself assets in which the estate should have had an interest. According to Matt, this theory was predicated on the Appellees' flawed understanding of Ralph's ownership interest in Spring Fork, LLC. Matt explained that Ralph only had a lifetime interest in Spring Fork, LLC which terminated at his death, meaning Ralph's estate had no claim to Spring Fork, LLC or its assets. Later in the litigation, the Appellees also questioned the propriety of certain expenditures Matt claimed were necessary for the administration of the estate.

order, he filed a motion to vacate, which he later supplemented with a memorandum of points and authorities. As will be explained in more detail below, the circuit court eventually vacated the September 24 order as part of the agreed final judgment submitted by the parties.

Before the bench trial commenced, the parties took part in a mediation at which they reached a global settlement of all claims and issues surrounding Ralph's estate. As part of the settlement, Matt, Robin, Jessica, and Joshua agreed to transfer the title to Ralph's house in Hazard to the Cousins to settle their creditors' claim against the estate. Additionally, Matt and the Appellees reached an agreement regarding final settlement and distribution of the estate's assets and Ralph's real property. Pursuant to the parties' agreement, Matt agreed to convey a set dollar amount to the Appellees and in return, the Appellees agreed to convey their interests in certain real property inherited from Ralph to Matt.[7] The parties further agreed that Matt, as executor of Ralph's estate, would distribute to each beneficiary his or her proportionate share of the net estate. The parties agreed the Appellees would collectively receive two-thirds of the estate's liquid assets (bank balances) after payment of the estate's legitimate expenses with Matt to receive the final one-third as well as all the remaining assets of the estate. Matt was to remain

---

[7] Although a dollar figure is not stated in the agreed final judgment, the parties agree the amount due from Matt was $93,500.00. In return, the Appellees agreed to convey to Matt their undivided interests in four parcels of real property which they had inherited from Ralph.

executor so long as the above transfers and distributions occurred within the following 120 days. If they did not, Matt agreed that Robin would replace him as executor at which time Matt was to provide an accounting of his actions as executor.

The parties advised the circuit court of the settlement. On the record, the parties conveyed the substance of their agreement to the circuit court and swore in open court that their participation in the agreement was voluntary. Thereafter, the circuit court directed the parties to prepare and file an agreed final judgment reflecting the substance of their settlement agreement. Although the parties had informed the circuit court of their agreement on October 19, 2018, for reasons that are not entirely clear from the record, the agreed final judgment submitted by the parties was not formally entered by the circuit court until April 5, 2019.[8]

Between the time the parties reached their agreement in October 2018 and entry of the agreed judgment in April 2019, several additional motions were filed with the circuit court. First, the Cousins filed a motion to compel the beneficiaries to convey a deed to the Hazard house to them as promised. The circuit court granted the Cousins' motion on January 31, 2019. Next, on March 14,

_____

[8] The last sentence of the judgment formally vacated the circuit court's prior order removing Matt as executor of Ralph's estate: "[T]he Order of this Court entered on September 24, 2018, replacing Robin Miniard for Matt Miniard as Executor of the Estate, is hereby vacated." (Record at 174.)

-6-

2019, the Appellees moved the circuit court to compel Matt to comply with the agreed final judgment executed by the parties. This motion was filed after Matt had tendered the estate proceeds to the Appellees. Matt included a list of expenditures with the tendered proceeds which totaled $50,439.23. The Appellees questioned certain expenditures by Matt as executor and were reluctant to conclude the settlement without a more detailed accounting through which they could ascertain the correctness of Matt's tendered distributions and the legitimacy of the alleged expenses.

According to Matt, after the motion had been filed, his counsel was told by counsel for the Appellees that they would hold off on the motion if Matt would provide documentation supporting the receipts and expenditures of the estate. Matt asserts that on the evening of Thursday, April 25, 2019, his counsel sent an email to counsel for the Appellees stating that Matt would provide the requested information thereby negating the need for the hearing, which was scheduled to take place the next morning. Believing he had addressed the matter with his Thursday evening email, Matt's counsel did not attend the Friday, April 26, 2019 hearing. However, counsel for the Appellees did not see the email until after the hearing had already taken place.[9] Since Matt's counsel was not at the

---

[9] According to the Appellees, the email was actually sent after 2:00 a.m. on Friday morning as opposed to late Thursday evening.

hearing to oppose the motion, the circuit court granted it, and a written order was entered by the circuit court on May 1, 2019. As part of the order, Matt was directed to make an itemized disclosure of all expenditures made from the estate while he served as the executor and to comply with the parties' agreement that Robin be named the executor after the expiration of 120 days. After the circuit court denied Matt's motion to set aside the order, he appealed to this Court.[10]

## II. ANALYSIS

Matt raises several issues on appeal. However, Matt did not appear at the April 26 hearing or otherwise timely contest the motion at issue. While this failure may have been caused by an erroneous belief that attendance at the hearing would not be necessary, we cannot excuse the fact that most of Matt's issues were not timely and appropriately raised before the circuit court. In most instances, we do not review unpreserved arguments. *Smith v. Commonwealth*, 410 S.W.3d 160, 167 (Ky. 2013) ("Fundamental to the concept of preservation of trial error in any

---

[10] Appellees filed a motion to dismiss Matt's appeal on the basis that the order was not made final and appealable by the circuit court. A motion panel of this Court determined Matt's appeal was proper and denied the motion to dismiss. As such, Appellees did not include any arguments about finality in their final brief. Nevertheless, since we have an obligation to independently ascertain whether we have jurisdiction, we have also examined the issue of finality. Having reviewed the issue, we agree with the motion panel. Even though the order did not contain finality language, it fully resolved the post-judgment issue before the circuit court leaving nothing else for the circuit court to decide as related to the parties before it. *See* Kentucky Rule of Civil Procedure ("CR") 54.01 ("A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding[.]").

context is that the trial judge was explicitly made aware of the action desired by the party. By definition, an assignment of error cannot be regarded as 'preserved' if its significance was never brought to the trial judge's attention.").

However, as part of this appeal, Matt argues that the circuit court lacked subject-matter jurisdiction. Subject-matter jurisdiction is defined as "the court's power to hear and rule on a particular type of controversy." *Nordike v. Nordike*, 231 S.W.3d 733, 737 (Ky. 2007). "Subject matter jurisdiction is not for a court to 'take,' 'assume,' or 'allow.'" *Id.* at 737-38. Likewise, subject-matter jurisdiction cannot be waived if not timely asserted. *Id.* at 738. This is because "[a] judgment entered by a court without subject matter jurisdiction is void *ab initio*." *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 833 (Ky. App. 2008). "Whether a court has the requisite jurisdiction to hear a case is a question of law." *Smith v. Doe*, 627 S.W.3d 903, 910 (Ky. 2021). Accordingly, we will review this issue *de novo* even though Matt failed to timely bring it to the circuit court's attention or otherwise oppose the Appellees' March 14 motion. *Id.*

Pursuant to KRS 24A.120(2), the district courts of this Commonwealth have "exclusive jurisdiction in . . . [m]atters involving probate, *except* matters contested in an adversary proceeding." (Emphasis added.) "Matters not provided for by statute to be commenced in Circuit Court shall be deemed to be nonadversarial within the meaning of subsection (2) of this section

and therefore are within the jurisdiction of the District Court[.]" KRS 24A.120(3). Thus, even when an adversary proceeding has been commenced in circuit court, "the district court shall retain jurisdiction to entertain any motions or matters not related to the adversarial proceeding," even during the pendency of the circuit court action. *Mullins v. First American Bank*, 781 S.W.2d 527, 529 (Ky. App. 1989). Additionally, "at the conclusion of the circuit court action, [the district court is free to] proceed with the probate of the estate to its conclusion." *Id.*

In other words, the circuit court's jurisdiction is limited to deciding matters related to the adversarial proceeding before it. This is far easier stated than applied. Indeed, "the concept of [an] adversary proceeding is a puzzle to courts as well as practitioners." *Id.* (internal quotation marks and citation omitted). And, like a puzzle, each adversary proceeding and what it entails is somewhat unique. Therefore, it is important for us to closely examine the nature of the adversary proceeding that was brought before the circuit court and the actions it took related thereto.

Ralph's estate was originally probated by the district court with Matt serving as executor per Ralph's will. However, on or about November 1, 2017, the Cousins filed the underlying circuit court action against Ralph's estate pursuant to KRS 395.510. In their complaint, the Cousins alleged that they were creditors of Ralph's estate by virtue of their agreement to provide care to Ralph. As alleged

-10-

creditors of the estate, KRS 395.510(1) permitted the Cousins to bring their suit in circuit court "for the settlement of [Ralph's] estate[.]" *Id.* In turn, KRS 395.515 vested the circuit court with the authority to adjudicate their claim as creditors "to receive payment or distribution" from Ralph's estate. Additionally, in the event the circuit court determined that Ralph's assets were not sufficient to cover his estate's debts, the circuit court had the authority to order Ralph's real property sold to cover his debts. *Id.*

The agreed final judgment followed the parties' mediation of the Cousins' claim and arose after the Appellees had raised questions before the circuit court regarding Matt's actions as executor. During the mediation, a negotiated settlement was reached between all the parties. As part of the settlement, Matt agreed to certain terms involving the final settlement of the estate. Included within those terms was that Matt would remain executor on the condition that the terms of the parties' agreement were performed within 120 days. If not, the agreement provided that Matt would step down as executor and turn over all assets of the estate to Robin along with a full and accurate accounting of all receipts, expenditures, and actions taken while he was executor. The settlement agreement was memorialized by the circuit court as part of its agreed final judgment. When Matt allegedly did not comply with the terms of the settlement, the Appellees filed a motion with the circuit court to compel Matt to do so. The circuit court enforced

-11-

the settlement agreement by granting the motion. In this very limited context, we are of the opinion that the circuit court had the jurisdiction to do so based on the parties' agreement.

We find the Supreme Court's analysis in *McGuire v. Citizens Fidelity Bank and Trust Company*, 805 S.W.2d 119 (Ky. 1991), instructive in this regard. This case involved the estate of E.R. McGuire, who died testate. E.R.'s two sons were appointed as co-executors of the estate. One of the two sons, L.R., later filed a voluntary motion in the district court to be removed as executor. Afterwards, the Appellees filed an action in circuit court alleging wrongdoing by the second son, E.E., and requesting his removal as executor. The circuit court granted the motion to remove E.E. and ordered him "to make a full accounting to the [circuit] court of the assets and liabilities of the estate and any and all expenditures that had been made." *Id.* at 120.[11] As part of this filing, E.E. made promises and agreements concerning the sale of stock. Thereafter, Citizens Fidelity Bank and Trust Company was appointed to serve as administrator *de bonis non* of the estate. The Bank then commenced its own action in circuit court to settle the estate pursuant to KRS 395.510 and 395.515. As part of that action, the circuit court ordered the

_____

[11] While the circuit court's action of removing E.E. as executor was not directly challenged at the appellate level, we note the Court recounted the factual history in this regard without comment, suggesting to us that it believed the circuit court had the authority to remove E.E. because the matter came before the circuit court as an adversarial proceeding insomuch as the complaining parties alleged wrongdoing by E.E.

-12-

stock sold to settle the estate. In his appeal, E.E. argued the circuit court lacked jurisdiction to order the stock sold because KRS 395.515 only gives the circuit court the authority to order the sale of "real property."

Our Supreme Court rejected E.E.'s argument that the circuit court acted outside its jurisdiction by ordering the stock sold. It concluded that E.E., in his personal capacity as well as in his capacity as a fiduciary of the estate, had entered into the contract with the appellees whereby he agreed to the sale of the stock. It held: "Where, and as we have held here, there is a binding and enforceable contract between a party and the personal representatives for the estate, and where the parties to that contract are before the court, it has in its sound judicial discretion the equity power to enforce that contract for the purpose of settling the estate." *McGuire*, 805 S.W.2d at 121.

As part of the settlement agreement with the Appellees and the Cousins, Matt agreed to his removal as executor if certain terms were not met. The agreement was part of and within the scope of the KRS 395.510 and 395.515 action for a "correct and lawful settlement of the estate." "Settlement agreements are a type of contract[.]" *Adamson v. Adamson*, 635 S.W.3d 72, 77 (Ky. 2021). And, "[w]ithin every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Trust Co. of Georgetown,*

-13-

*Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005); *see also*

*Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). Thus, we

conclude that implicit in the agreement was Matt's promise to assist in carrying out

his removal as executor after the passage of 120 days should it become necessary.[12]

Further, the parties' settlement agreement was made part of a court

order. The circuit court had the authority to enforce its own order by directing

Matt to comply with the agreement. Thus, we cannot agree with Matt that the

order on appeal is void. Matt agreed to his removal as executor after 120 days so

that the estate could be settled as provided by KRS 395.510 and 395.515. The

circuit court was simply enforcing the parties' contract "for the purpose of settling

the estate." *McGuire*, 805 S.W.2d at 121. Accordingly, we find no error with

respect to the circuit court's jurisdiction.

Since Matt did not contest the Appellees' motion when it came before

the circuit court, as noted above, we deem his other arguments unpreserved and

decline to review them.[13]

---

[12] This would necessarily include the completion of any ministerial acts before the district court necessary to have Robin formally appointed as executor of Ralph's estate.

[13] In his reply brief, Matt asserts that he made several of his arguments to the circuit court by way of an April 26, 2019, letter from his counsel to the circuit court. A letter from an attorney is not the proper method to respond to a written motion. Matt could have filed a written response and/or attended the hearing and lodged his objections on the record. We do not deem his belated letter to the court as sufficient to preserve Matt's arguments for the purposes of appeal.

## III. CONCLUSION

For the foregoing reasons, we affirm the Perry Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Charles J. Lisle
Lexington, Kentucky

BRIEF FOR APPELLEE:

James A. Hubbard
Isom, Kentucky